1           UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF TEXAS
2                HOUSTON DIVISION
                  HOUSTON, TEXAS
3            JUNE 6, 2019, 11:30 A.M.

4

5    UNITED STATES OF AMERICA    .    4:19-CR-00154

6    VERSUS                      .

7    JUSTIN BYRD                  .

8    . . . . . . . . . . . . . .

9    UNITED STATES OF AMERICA    .    4:18-CR-00344-4

10                               .

11   VERSUS                      .

12                               .

13   JAY BENDER, M.D.,           .

14   . . . . . . . . . . . . . .

15              TRANSCRIPT OF REARRAIGNMENTS
            BEFORE THE HONORABLE SIM LAKE
16           UNITED STATES DISTRICT JUDGE

17

18                   ***APPEARANCES***

19

20

21   FOR THE GOVERNMENT IN THE BYRD CASE:

22        Jill Stotts
          Assistant United States Attorney
23        1000 Louisiana
          Suite 2300
24        Houston, Texas  77002

25

1                          **APPEARANCES CONTINUED**

2

3

4    FOR DEFENDANT BYRD:

5         Ashley Kaper
          Assistant Federal Public Defender
6         440 Louisiana
          Suite 1350
7         Houston, Texas  77002

8    FOR THE GOVERNMENT IN THE BENDER CASE:

9         Catherine E. Wagner
          UNITED STATES DEPARTMENT OF JUSTICE
10        CRIMINAL DIVISION, FRAUD SECTION
          1000 Louisiana
11        Suite 2300
          Houston, Texas  77002

12

13

     FOR DEFENDANT BENDER:
14
          Eugene Paul Tausk
15        TAUSK & VEGA
          1221 Studewood Street
16        Houston, Texas  77008

17

     OFFICIAL COURT REPORTER:
18
          Mayra Malone, CSR, RMR, CRR
19        U.S. Courthouse
          515 Rusk, Room 8004
20        Houston, Texas  77002

21

22   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
23

24                         - - - - -

25

***PROCEEDINGS***

  THE COURT: We have two defendants scheduled for
rearraignment this morning.

   When I call your case, please approach the bench
and identify yourself.

   United States versus Justin Byrd, Criminal Action
H-19-154.

  MS. STOTTS: Good morning, Your Honor. Jill Stotts
for the United States.

  MS. KAPER: Ashley Kaper for Mr. Byrd.

  THE COURT: Could you please state your name, sir?

  DEFENDANT BYRD: Justin Byrd.

  THE COURT: I understand that you wish to plead guilty
to Count Two of the superseding indictment which charges you
with aiding and abetting brandishing of a firearm during and in
relation to a crime of violence, in violation of Title 18,
United States Code, Sections 924(c)(1)(A)(ii) and 2. Is that
correct?

  DEFENDANT BYRD: Yes, sir.

  THE COURT: We also have United States versus Jay
Bender, Criminal Action H-18-344.

  MS. WAGNER: Good morning, Your Honor. Catherine
Wagner for the United States.

  MR. TAUSK: Good morning, Your Honor. Gene Tausk for
Dr. Bender.

11:32   1          THE COURT:  Would you please stand in front of

2     Mr. Tausk?

3          *(Compliance)*

4          THE COURT:  Could you state your name, sir?

11:32   5          DEFENDANT BENDER:  Jay Bender, M.D.

6          THE COURT:  I understand that you wish to plead guilty

7     to Count Two of the indictment which charges you with

8     conspiracy to commit wire fraud, in violation of Title 18,

9     United States Code, Section 1349.  Is that correct?

11:33   10         DEFENDANT BENDER:  Yes, Your Honor.

11         THE COURT:  Would both of you gentlemen please raise

12    your right hands and be sworn?

13         *(Defendants sworn)*

14         THE COURT:  If both of you gentlemen would please

11:33   15    listen carefully.  Before I can accept your guilty plea, I must

16    ask you a number of questions.  It is very important that you

17    listen carefully to all of my questions and that you answer all

18    of my questions truthfully and completely for several reasons.

19              First, since you are now under oath, if you gave

11:33   20    an untrue answer to a question, you could be charged with a

21    separate crime of perjury.

22              Do each of you understand that?

23         DEFENDANT BYRD:  Yes, sir.

24         DEFENDANT BENDER:  Yes, Your Honor.

11:33   25         THE COURT:  Also, before I can accept your plea, I

11:33   1   must make a number of findings.  My findings are based on your

2   answers to my questions.  In order for my findings to be

3   correct, it is therefore necessary that all of your answers to

4   my questions be truthful and complete.

11:34   5           Do each of you understand that?

6        DEFENDANT BYRD:  Yes, sir.

7        DEFENDANT BENDER:  Yes, Your Honor.

8        THE COURT:  If you do not understand anything that I

9   say this morning, will you agree that you will stop and ask me

11:34   10   to repeat or explain anything that you did not understand.

11          Dr. Bender, will you agree to do that?

12        DEFENDANT BENDER:  Yes, Your Honor.

13        THE COURT:  And, Mr. Byrd, will you agree to do that?

14        DEFENDANT BYRD:  Yes, sir.

11:34   15        THE COURT:  Also, each of you may stop at any time and

16   speak with your attorney.  You do not need anyone's permission

17   to speak with your attorney.

18          Mr. Byrd, how old are you?

19        DEFENDANT BYRD:  Thirty-two.

11:34   20        THE COURT:  Where were you born?

21        DEFENDANT BYRD:  Houston.

22        THE COURT:  Did you graduate from high school?

23        DEFENDANT BYRD:  No, sir.

24        THE COURT:  How many years of school did you complete?

11:34   25        DEFENDANT BYRD:  Ten.

11:34  1          THE COURT:  After you left school, did you receive any

2     other type of formal training or education?

3          DEFENDANT BYRD:  No, sir.

4          THE COURT:  What is the last job that you held?

11:35  5          DEFENDANT BYRD:  I worked at a warehouse.

6          THE COURT:  What did you do there?

7          DEFENDANT BYRD:  Shipping department.

8          THE COURT:  Have you ever been diagnosed or treated

9     for any type of mental problem?

11:35  10         DEFENDANT BYRD:  No, sir.

11         THE COURT:  Have you ever been diagnosed or treated

12    for addiction to drugs or alcohol?

13         DEFENDANT BYRD:  No, sir.

14         THE COURT:  Have you taken any type of drug or

11:35  15    medicine within the last 24 hours?

16         DEFENDANT BYRD:  No, sir.

17         THE COURT:  How many times have you spoken with your

18    attorney, Ms. Kaper, about this case?

19         DEFENDANT BYRD:  About four or five times.

11:35  20         THE COURT:  Has she discussed with you the charges

21    against you and what the government would have to prove to

22    establish your guilt?

23         DEFENDANT BYRD:  Yes, sir.

24         THE COURT:  Has she reviewed with you the evidence

11:35  25    that the government has against you?

11:35　1　　　　DEFENDANT BYRD:  Yes, sir.

2　　　　THE COURT:  Has she discussed with you how the federal

3　advisory sentencing guidelines might apply in your case?

4　　　　DEFENDANT BYRD:  Yes, sir.

11:35　5　　　　THE COURT:  Has Ms. Kaper answered all of your

6　questions?

7　　　　DEFENDANT BYRD:  Yes, sir.

8　　　　THE COURT:  Has she done everything that you have

9　asked her to do?

11:36　10　　　　DEFENDANT BYRD:  Yes, sir.

11　　　　THE COURT:  Are you fully satisfied with the advice

12　and counsel that Ms. Kaper has provided you?

13　　　　DEFENDANT BYRD:  Yes, sir.

14　　　　THE COURT:  Dr. Bender, how old are you?

11:36　15　　　　DEFENDANT BENDER:  Fifty-three.

16　　　　THE COURT:  Where were you born?

17　　　　DEFENDANT BENDER:  Nashville, Tennessee.

18　　　　THE COURT:  Would you briefly describe your education

19　for me?

11:36　20　　　　DEFENDANT BENDER:  Yes, sir.  I graduated high school.

21　Graduated University of Nebraska in Lincoln, Nebraska.  From

22　that point, went to medical school at the University of

23　Nebraska in Omaha.  From that point, did a fellowship at MD

24　Anderson Cancer Center here in Houston in pain management.

11:36　25　　　　THE COURT:  Are you licensed to practice medicine by

the state of Georgia?

    DEFENDANT BENDER:  Yes, sir.

    THE COURT:  Have you ever been diagnosed or treated for any type of mental problem?

    DEFENDANT BENDER:  No, sir.

    THE COURT:  Have you ever been diagnosed or treated for addiction to drugs or alcohol?

    DEFENDANT BENDER:  No, sir.

    THE COURT:  Have you taken any type of drug or medicine within the last 24 hours?

    DEFENDANT BENDER:  No, sir.

    THE COURT:  Have you consumed any alcoholic beverages within the last 24 hours?

    DEFENDANT BENDER:  No, sir.

    THE COURT:  How many times have you spoken with your attorney, Mr. Tausk, about this case?

    DEFENDANT BENDER:  Multiple times, sir.

    THE COURT:  At least 10?

    DEFENDANT BENDER:  Yes, sir.

    THE COURT:  Has he discussed with you the charges against you and what the government would have to prove to establish your guilt?

    DEFENDANT BENDER:  Yes, sir.

    THE COURT:  Has your attorney reviewed with you the evidence that the government has against you?

11:37   1         DEFENDANT BENDER:  Yes, sir.

2         THE COURT:  Has he discussed with you how the federal

3  advisory sentencing guidelines might apply in your case?

4         DEFENDANT BENDER:  Yes, sir.

11:37   5         THE COURT:  Has your attorney answered all of your

6  questions?

7         DEFENDANT BENDER:  Yes, he has.

8         THE COURT:  Has he done everything that you have asked

9  him to do?

11:37  10         DEFENDANT BENDER:  Yes, sir.

11         THE COURT:  Are you fully satisfied with the advice

12  and counsel that your attorney has provided you?

13         DEFENDANT BENDER:  I am.

14         THE COURT:  Now, if both of you will please listen

11:37  15  carefully.  You do not have to plead guilty.  You have a right

16  to go to trial.  If you went to trial, you would have the right

17  to the assistance of an attorney at all stages of the trial.

18  If you could not afford an attorney, the Court could appoint an

19  attorney for you.  You would have the right to see and hear the

11:38  20  government's witnesses at trial and have your attorney question

21  them.  You would have the right to compel other people to come

22  into court and provide evidence for you.  You would not be

23  required to testify at a trial.  And you could not be convicted

24  at a trial unless the jury unanimously found beyond a

11:38  25  reasonable doubt that you were guilty.

11:38 1    If you plead guilty today, however, there will

2 not be a trial and you will give up the right to a trial and

3 all of the protections associated with a trial.

4     Mr. Byrd, do you understand that?

11:38 5    DEFENDANT BYRD:  Yes, sir, I do.

6    THE COURT:  Dr. Bender, do you understand that?

7    DEFENDANT BENDER:  Yes, Your Honor.

8    THE COURT:  Mr. Byrd, if you plead guilty, you face a

9 sentence of at least seven years in prison and a five-year term

11:39 10 of supervised release and a fine of up to $250,000 and a $100

11 special assessment.

12     Do you understand that?

13    DEFENDANT BYRD:  Yes, sir.

14    THE COURT:  Dr. Bender, if you plead guilty, you face

11:39 15 a term of up to 20 years in prison, up to three years of

16 supervised release, a fine of $250,000, or twice the gain or

17 loss, a $100 special assessment and restitution to the victim.

18     Do you understand that?

19    DEFENDANT BENDER:  Yes, Your Honor.

11:39 20    THE COURT:  In addition, since the offenses you are

21 pleading guilty to are felonies, each of you will lose the

22 right to vote, hold public office, serve on a jury and possess

23 a firearm.

24     The Court has not made any decision about what

11:40 25 either of your sentences will be.  If I accept your guilty

11:40   1   plea, a probation officer will interview you, investigate the

2   facts of the case and prepare a presentence investigation

3   report.  You will have an opportunity to read the report and to

4   discuss the report with your attorney before your sentencing.

11:40   5   You or the government may file objections to the presentence

6   report.  At the time of your sentencing, I will rule on any

7   objections and I will then determine your advisory guideline

8   range and your sentence.

9           What each of you need to understand today is that

11:40  10   this process of determining your sentence has not yet begun.

11   That means no one knows what advisory guideline range the

12   probation officer will recommend or what advisory guideline

13   range the Court will find applicable or what sentence the Court

14   will impose.

11:40  15           Mr. Byrd, do you understand that?

16           DEFENDANT BYRD:  Yes, sir.

17           THE COURT:  Dr. Bender, do you understand that?

18           DEFENDANT BENDER:  Yes, Your Honor.

19           THE COURT:  If the sentence that the Court imposes is

11:41  20   greater than the sentence that you now expect or greater than

21   the sentence that your attorney or anyone else may have

22   predicted, you will be bound by your guilty plea today

23   regardless of your sentence.  You will not be allowed to change

24   your mind and withdraw your guilty plea because you are not

11:41  25   satisfied with your sentence.

11:41  1          Mr. Byrd, do you understand that?

2    DEFENDANT BYRD:  Yes, sir.

3    THE COURT:  Dr. Bender, do you understand that?

4    DEFENDANT BENDER:  Yes, Your Honor.

11:41  5    THE COURT:  In addition, each of you needs to

6    understand there is no parole in the federal judicial system.

7    That means you will actually have to serve in prison any

8    custodial sentence.  Also, any term of supervised release will

9    be subject to a number of conditions which will be monitored by

11:41  10   a probation officer.  If I found that you violated those

11   conditions, I could revoke your supervised release and send you

12   back to prison without any credit for the time you had already

13   served on supervised release.

14         Do each of you understand that?

11:42  15   DEFENDANT BENDER:  Yes.

16   DEFENDANT BYRD:  Yes, sir.

17   THE COURT:  Mr. Byrd, the Court has been furnished a

18   copy of a written plea agreement.  Have you read the agreement?

19   DEFENDANT BYRD:  Yes, sir.

11:42  20   THE COURT:  When did you read it?

21   DEFENDANT BYRD:  Just not too long ago.

22   THE COURT:  Pardon me?

23   DEFENDANT BYRD:  Just not too long ago with my lawyer.

24   THE COURT:  Today or before today?

11:42  25   DEFENDANT BYRD:  Today.

THE COURT:  How much time did you spend reviewing it with your lawyer?

DEFENDANT BYRD:  It was long enough.

THE COURT:  Well, I don't want you telling me in the future that you only spent 10 minutes and if you would have had more time, you would have decided not to plead guilty.  So give me your best estimate of how much time you spent with your lawyer talking about the agreement.

DEFENDANT BYRD:  Well, it's been -- it's -- it was more than 10 minutes.

THE COURT:  Was it more than 20 minutes?

DEFENDANT BYRD:  About 30 minutes.

THE COURT:  Was that enough time?

DEFENDANT BYRD:  Yes, sir.

THE COURT:  Did you read the agreement before then?

DEFENDANT BYRD:  Yes, sir.  We went through it.

THE COURT:  And did she answer your questions?

DEFENDANT BYRD:  Yes, sir.

THE COURT:  All right.  I want to go over the main parts of the agreement again just to be sure you understand them.

In paragraph 1, you agree to plead guilty to Count Two, which I described earlier.  In paragraph 7, the government agrees that if your offense level is 16 or more, it will move for an additional one level downward adjustment in

11:43  1    your offense level, and the government agrees to dismiss the
       2    remaining counts at the time of your sentencing.
       3              Now, other than the factual basis for your guilty
       4    plea, which I will discuss in a moment, have I accurately
11:44  5    described your plea agreement with the government as you
       6    understand the agreement?
       7              DEFENDANT BYRD:  Yes, sir.
       8              THE COURT:  Other than what is stated in this written
       9    agreement, has the government made any promises to you in
11:44  10   connection with your guilty plea?
       11             DEFENDANT BYRD:  Yes, sir.
       12             THE COURT:  What other promises has the government
       13   made to you?
       14             DEFENDANT BYRD:  That I was pleading to the firearm.
11:44  15             THE COURT:  Well, I know you are going to plead to
       16   that.  That's your promise to them.  The government has told
       17   you that you're basically going to get a one-level downward
       18   reduction for pleading guilty and the government will move to
       19   dismiss the other count.
11:44  20             Other than those two promises, has the government
       21   made any promises to you?
       22             DEFENDANT BYRD:  No, sir.
       23             THE COURT:  Has anyone threatened you or forced you to
       24   plead guilty?
11:44  25             DEFENDANT BYRD:  No, sir.

11:45  1          THE COURT:  Has the government told you what sentence

2    you will receive?

3          DEFENDANT BYRD:  No, sir.

4          THE COURT:  Has your lawyer told you what sentence you

11:45  5    will receive?

6          DEFENDANT BYRD:  No, sir.

7          THE COURT:  What did she tell you about your sentence?

8          DEFENDANT BYRD:  I can't really remember that.

9          THE COURT:  What sentence do you think you are going

11:45  10   to receive?

11         DEFENDANT BYRD:  I don't know.

12         MS. KAPER:  You can explain to the judge that we

13   talked about the mandatory minimum.  We know it is seven.  We

14   discussed the mandatory minimum, that's seven to life, and we

11:45  15   have reviewed this on more than one occasion, what the penalty

16   range is.

17         THE COURT:  Is that right, Mr. Byrd?

18         DEFENDANT BYRD:  Yes, sir.

19         THE COURT:  Do you understand you are going to get at

11:45  20   least seven years in prison if you plead guilty today?  Do you

21   understand that?

22         DEFENDANT BYRD:  Yes, sir, I do.

23         THE COURT:  All right.  In order for the government to

24   prove your guilt at trial, the government would have to show

11:46  25   that the crime of interference with robbery by brandishing a

firearm was committed and that you associated with that
criminal venture and purposely participated in the venture and
that you sought by your action to make the venture successful.

In this case, the government would have to show
that you and Derrick Punchard participated in a robbery and
that you knowingly brandished a firearm during your robbery and
that you knew that a firearm would be brandished before the
robbery.

Now, have the victims been informed of this plea
agreement?

MS. STOTTS:  They have, Your Honor.

THE COURT:  Have any of them expressed a willingness
to be here?

MS. STOTTS:  No, Your Honor.

THE COURT:  Have any of them rejected the plea
agreement?

MS. STOTTS:  No, Your Honor.

THE COURT:  Mr. Byrd, if you will turn, please, to
your plea agreement to page 5.  Paragraph 12 says:  Defendant
is pleading guilty because he is guilty of the charges
contained in the superseding indictment.

If this case were to proceed to trial, the
government could prove each element of the offense beyond a
reasonable doubt.  The following facts, among others, would be
offered to establish the defendant's guilt.

11:47  1                    On page 5 and 6, the government sets out the

2     facts it says it could prove if your case were tried.

3                    Have you carefully read pages 5 and 6 of the plea

4     agreement?

11:47  5              MS. KAPER:  I read it to him verbatim.

6              THE COURT:  Is that right?

7              DEFENDANT BYRD:  Yes, sir.

8              THE COURT:  Did you and Mr. Punchard on or about

9     December 6, 2018 rob the Circle K convenience store on West

11:48  10    18th Street in Houston?

11             DEFENDANT BYRD:  Yes, sir.

12             THE COURT:  And did you have a gun?

13             DEFENDANT BYRD:  Yes, sir.

14             THE COURT:  What type of gun did you have?

11:48  15             DEFENDANT BYRD:  I don't know what kind of gun it was.

16             THE COURT:  What color was it?

17             DEFENDANT BYRD:  It was black.

18             THE COURT:  Was it a revolver or a semiautomatic?

19             DEFENDANT BYRD:  Semiautomatic.

11:48  20             THE COURT:  And did you point the gun at the person

21    inside the store?

22             DEFENDANT BYRD:  Yes, sir.

23             THE COURT:  How do you plead to the offense charged

24    against you?  Guilty or not guilty?

11:48  25             DEFENDANT BYRD:  Guilty.

THE COURT: Counsel, do you think any other advice of rights is required before I can accept your client's plea?

MS. KAPER: No, Your Honor.

THE COURT: The parties may now sign the plea agreement.

It is the finding of the Court that the defendant is fully competent and capable of entering an informed plea and that the defendant's plea of guilty is a knowing and voluntary plea supported by an independent basis in fact establishing each of the essential elements of the offense. I therefore accept your plea and now adjudge you guilty of Count Two.

MS. STOTTS: Your Honor, I do have a preliminary order of forfeiture with regards to the firearm that was used during this offense.

THE COURT: Your sentencing will be September 26 at 2:00 p.m.

Do either counsel in Mr. Byrd's case wish to say anything else?

MS. STOTTS: No, Your Honor.

MS. KAPER: No, Your Honor. Thank you.

THE COURT: The defendant is remanded to the custody of the marshal, and the marshals are excused.

*(All parties in the Byrd case depart)*

THE COURT: Dr. Bender, the government has furnished the Court a copy of your plea agreement. Have you read the

1  agreement?

2       DEFENDANT BENDER:  Yes, sir.

3       THE COURT:  When did you read it?

4       DEFENDANT BENDER:  A few weeks ago -- a couple months

5  ago actually.

6       THE COURT:  Have you discussed it with your lawyer?

7       DEFENDANT BENDER:  Yes, sir.

8       THE COURT:  How much time would you estimate you spent

9  discussing it with your lawyer?

10       DEFENDANT BENDER:  Well over 30 hours.

11       THE COURT:  Thirty hours?

12       DEFENDANT BENDER:  Maybe 20.

13       THE COURT:  Okay.  Did he answer all of your

14  questions?

15       DEFENDANT BENDER:  Yes, sir.

16       THE COURT:  I want to go over the essential parts of

17  it again just to be sure you understand it.

18            Do you have a copy before you?

19       MR. TAUSK:  Yes, Your Honor.

20       THE COURT:  In paragraph 1, you agree to plead guilty

21  to Count Two which I described earlier.

22            If you will turn, please, to page 3.

23            Paragraph 5 says:  Defendant understands and

24  acknowledges that as a result of this plea, defendant will be

25  excluded from participating in all federal health care

11:51  1    programs, including the Federal Employees Compensation Act and

2    Medicare and Medicaid programs.

3              Paragraph 6 says:  The parties understand this

4    plea agreement carries the potential for a motion for departure

11:51  5    under Section 5K1.1 of the sentencing guidelines.

6              Defendant understands and agrees that whether

7    such a motion is filed will be determined solely by the United

8    States Department of Justice Criminal Division Fraud Section.

9              You need to understand that what that means is,

11:51 10    if the Criminal Division Fraud Section should decide not to

11    file a motion for downward departure, there is nothing that you

12    can do about that decision.  Do you understand that?

13         DEFENDANT BENDER:  Yes, Your Honor.

14         THE COURT:  By fully cooperating, you agree to testify

11:51 15    truthfully as a witness before any grand jury or trial jury.

16    You agree to provide all information relating to any criminal

17    activity known to you, including but not limited to money

18    laundering, health care fraud and paying and receiving health

19    care kickbacks.

11:52 20              You agree voluntarily to attend interviews and

21    conferences requested by the government, and you agree to

22    provide all documents in your possession or subject to your

23    control.

24              If you will turn, please, to page 5.

11:52 25              The government agrees that in addition to the

two-level downward adjustment in your offense level that you will receive for pleading guilty, if your offense level is 16 or more, the government will move for an additional one-level downward adjustment. The government agrees to recommend a sentence at the low end of the applicable sentencing guideline range.

The government agrees that if you're entitled to a 5K1 motion, the government will recommend the low end of the lower guideline range recommended in the 5K1 motion.

The government agrees that it will dismiss the remaining counts at the time of your sentencing.

Now, have I correctly described your plea agreement with the government as you understand it?

DEFENDANT BENDER: Yes, Your Honor.

THE COURT: If you will turn, please, to paragraph 22 on page 12.

You also agree to pay restitution to the victims, and you agree that as a result of your criminal conduct, the Office of Workers Compensation suffered a monetary loss of at least 24 million.

In paragraphs 23 and 24, you agree and stipulate that your plea agreement supports a forfeiture of at least $445,593.78.

Now, have I correctly described your agreement with the government as you understand it?

11:53   1          DEFENDANT BENDER:  Yes, Your Honor.

2          THE COURT:  Other than what is stated in this

3  agreement, has the government made any promises to you in

4  connection with your guilty plea?

11:54   5          DEFENDANT BENDER:  No, sir.

6          THE COURT:  Has anyone threatened you or forced you to

7  plead guilty?

8          DEFENDANT BENDER:  No, sir.

9          THE COURT:  Has the government told you what sentence

11:54  10  you will receive if you plead guilty?

11          DEFENDANT BENDER:  No, sir.

12          THE COURT:  Has your lawyer told you what sentence you

13  will receive if you plead guilty?

14          DEFENDANT BENDER:  No, sir.

11:54  15          THE COURT:  Has anyone else told you what sentence you

16  will receive if you plead guilty?

17          DEFENDANT BENDER:  No, sir.

18          THE COURT:  In order for the government to prove your

19  guilt at trial, the government would have to show that you and

11:54  20  at least one other person agreed to commit the crime of wire

21  fraud and that you knew of the unlawful purpose of the

22  agreement and joined in the agreement willfully.  That is, with

23  the intent to further that unlawful purpose.  In order for the

24  government to prove the offense of wire fraud, the government

11:54  25  would have to show that one member of a conspiracy agreed to a

11:54 1 scheme to defraud, that is to commit health care fraud, and

2 that the scheme involved material false representations and

3 that you or a member of the conspiracy caused to be transmitted

4 by wire communication in interstate commerce a writing for the

11:55 5 purpose of executing the scheme and that you acted with a

6 specific intent to defraud.

7 Now, if you will turn back to your plea

8 agreement. Turn, please, to page 8.

9 Paragraph 16 says: Defendant is pleading guilty

11:55 10 because he is guilty of the charges contained in Count Two. If

11 this case were to proceed to trial, the United States could

12 prove each element of the offense beyond a reasonable doubt.

13 The following facts, among others, would be offered to

14 establish the defendant's guilt.

11:56 15 On pages 8, 9 and 10, the government sets out the

16 facts that it says it could prove if your case were tried.

17 Have you carefully read pages 8, 9 and 10 of the

18 plea agreement?

19 DEFENDANT BENDER: Yes, Your Honor.

11:56 20 THE COURT: Are all the facts stated there true?

21 DEFENDANT BENDER: Yes, Your Honor.

22 THE COURT: Did you do everything described on those

23 pages of the plea agreement?

24 DEFENDANT BENDER: Yes, Your Honor.

11:56 25 THE COURT: In particular, when you saw the patients

11:56    1    referred to you from coconspirators, did you know that they did

2    not need the compound prescriptions that you prescribed for

3    them?

4         DEFENDANT BENDER: Yes, Your Honor.

11:56    5         THE COURT: How do you plead to the offense charged

6    against you in Count Two? Guilty or not guilty?

7         DEFENDANT BENDER: Guilty.

8         THE COURT: Counsel, do you think any other advice of

9    rights is required before I can accept your client's plea?

11:56    10         MS. WAGNER: No, Your Honor.

11         MR. TAUSK: No, Your Honor.

12         THE COURT: The parties may now sign the plea

13    agreement.

14         It is the finding of the Court that the defendant

11:57    15    is fully competent and capable of entering an informed plea and

16    that the defendant's plea of guilty is a knowing and voluntary

17    plea supported by an independent basis in fact establishing

18    each of the essential elements of the offense.

19         I therefore accept your plea and now adjudge you

11:57    20    guilty of Count Two.

21         Your sentencing will be September 19th

22    at 2:00 p.m.

23         Does either counsel wish to say anything else?

24         MS. WAGNER: No, Your Honor.

11:58    25         MR. TAUSK: No, Your Honor.

1          THE COURT:  Any objection to the defendant remaining

2   on supervised release?

3          MS. WAGNER:  No, Your Honor.

4          THE COURT:  Dr. Bender, you will remain on supervised

5   release under the same terms as given to you by the magistrate

6   judge.

7          DEFENDANT BENDER:  Yes, sir.

8          THE COURT:  Counsel are excused.

9       *(Court adjourned at 11:58 a.m.)*

10                             * * * *

11       I certify that the foregoing is a correct transcript from

12   the record of proceedings in the above-entitled cause.

13

14   Date: April 10, 2020

15

16                      */s/ Mayra Malone*
                        ---------------------------------------
17                      Mayra Malone, CSR, RMR, CRR
                        Official Court Reporter

18

19

20

21

22

23

24

25